Good morning, Your Honor. Donald Falk for Appellant AT&T Wireless Services of California, LLC. I will try to maintain five minutes for rebuttal. Okay. The district court in this case refused to enforce the arbitration provision because it was part of a form contract and because it required customers to resolve their own disputes and only their own disputes in a way that carried out and reflected the informality, efficiency, simplicity, and expedition that the Federal Arbitration Act was designed and intended to protect. This Court recently recognized in the GRAMPA that the Federal Arbitration Act is the object of that act is to get the parties into arbitration as quickly as possible. That is what should have happened here. I'd like to begin by discussing the procedural unconscionability issues in light of the GRAMPA, which I think sheds some light on why there was no basis to refuse to compel arbitration in this case. The grounds for procedural unconscionability found by the district court are confined to the fact of a form contract. That, as this Court held in the GRAMPA, is an argument that in a case like this, where the arbitration provision is one part of a broader contract, that argument is one that goes to the enforceability of a contract as a whole. And, therefore, generally belongs in front of the arbitrator. And this Court determined in the GRAMPA that an argument like that, that addresses the enforceability of the contract as a whole, is something that this Court or another Court cannot address. And I... What if the unconscionable, and I'm now assuming that the GRAMPA stays on the books as good law in the circuit. What if the only argument as to unconscionability comes out of the arbitration clause? There's nothing else in the contract that is arguably unconscionable. Does the GRAMPA nonetheless say that the unconscionability decision has to go to the arbitrator? As I understand the GRAMPA and as I understand Prima Paint, if an argument of unconscionability, an unconscionability argument, is rooted in the contract, is something that would go to the enforceability of the contract as a whole, it goes to the arbitrator. What happens if, for example, there's a severability clause? So it would not necessarily go to the enforcement of the contract as a whole? Well, if an argument is directed solely at the arbitration clause, then under Prima Paint, if it doesn't go to the arbitrator, then it's a gateway issue. And to say, that is to say, I'm not sure I understand the answer. That is to say, if we have an arbitration clause embedded in a contract, not a freestanding arbitration clause, as, for example, we see in the Circuit City line of cases. Two ways to read a GRAMPA. One is to say, well, if the arbitration clause is embedded in a larger contract, there is no way a court can ever decide unconscionability because it's in a larger contract. Another way is to say, but if the argument is direct, argument of unconscionability is directed solely at the unconscionability clause, or you could find it unconscionable without looking at the rest of the contract, then the court can decide. Which of those two readings do you think is the right one for NAGRAMPA? Well, those arguments that go to the contract as a whole, I think under NAGRAMPA and under Casarato, which says that you can't look at a you can't take an argument against enforcing a contract, an unconscionability argument or anything else, and say, well, we can enforce every other term in the contract, but not the arbitration clause, based on an argument that covers the whole contract. And in this case, and in NAGRAMPA, the procedural unconscionability argument addressed the whole contract, if there was a procedural unconscionability argument that addressed only the arbitration clause and was not something that, if accepted, should taint the entire contract or not, depending on how, you know, how bad it might be. Mr. Fonk, but wasn't the claim of procedural unconscionability here that the clause was tucked away in the public service announcements? Your Honor, that was not a claim made until it was not the basis of the district court's decision, and as I understand it, and could not find that it had been asserted in the district court. It's made now, and I think it's meritless for NAGRAMPA addresses a little bit of this. It's really meritless for different reasons. NAGRAMPA certainly says that, you know, being farther down is not by itself a basis of finding surprise unconscionability. Here, it's really more a matter of the facts. On the second page of the welcome guide, it tells you you have a contract. It also, by the way, tells you you may have issues with delayed billing if you travel a lot. It tells you the contract's on page 21 of that, which is, I think, ER 33 or 34. I apologize. I don't have that memorized. When you get to that part, in still in large type, there's a bullet point that says this contract provides for a dispute resolution through arbitration. It says a little bit less lawyer-like language. It says resolve dispute through arbitration and even mentions class actions. They do not through class actions, not through trials or class actions. And then when you get to the arbitration clause itself, it begins with a dispute resolution clause. It's labeled. It begins in all caps and, again, repeats that this means that you will resolve disputes through arbitration, not through trials or class actions. So I think the argument that this is buried is meritless as a matter of fact, and as this Court found in Negrempa, should not detain the Court here. There is not a gateway issue on procedural unconscionability. Let's suppose that you're right and move to the next issue. What do we gain by sending it back under Negrempa to the federal arbitrator to determine whether it's unconscionable both procedurally and substantively in view of our holding in Ting? Isn't Ting going to bind the arbitrator? Well, Your Honor, there are several reasons why Ting, I don't believe, binds either the arbitrator or this Court. The most obvious one is that the Supreme Court of California this afternoon is hearing argument on the same issues and is likely at least to clarify to some The Ting is certainly binding, as far as I misspoke. Ting is certainly binding to the extent that the issues it covered, it's binding. As far as its predictions of what the California Supreme Court will do, which is what this Court was doing in Ting, necessarily predicting what the California Supreme Court will do, not just looking at what the courts of appeal had done at that point, being Shatella. The California Supreme Court, I believe, is going to tell us what it's going to do. I would suggest that if it somehow manages to dodge that, its opinion will be out in early July unless they're willing to miss a paycheck, it will be out in early July and we'll know. If they do somehow avoid deciding that issue because it is an important issue, I would suggest that the issue be certified. But I think most important is we're going to know a lot more by July As I say, there is a possibility. That's an argument for saying we shouldn't decide the question until Discover Bank is determined. Well, I think certainly. But as far as you do agree, I don't want to put words in your mouth. You do agree that Ting is binding, not only on us, but on the arbitrator if we were to remand under the grandpa. Well, it's binding to the extent that the Ting panel decided all the issues and the Ting panel did not address some of the issues under California unconscionability law. That are here? Perhaps, pardon? That are here? That are here. That's what I'm after. How is Ting distinguishable from our case? Ting is distinguishable because, as this court also held in the grandpa, there are issues that were not raised or at least not decided in Ting that go both to California unconscionability law, and I have in mind the reasonable justification element that was set forth in amenders, and also because the panel in Ting did not grapple with some of the Federal Arbitration Act restrictions on how far the label unconscionability can be used to justify state courts or other courts imposing what amounts to arbitration only rules. The first issue, reasonable justification, just doesn't appear at all in Ting. The second issue, preemption appears, but the Ting court addressed it only in the broadest terms. It said that, you know, we don't see any hostility on the part of the district court here case closed, and that is not. You're using a term which is very familiar to you, but I don't know if we understand the same thing. When you say the term reasonable justification was not used in Ting, is that as to procedural unconscionability? Is that substantive unconscionability? Why don't you put it in the right pigeonhole? Okay. Maybe I'm jumping ahead here, Your Honor, and jumping ahead to substantive unconscionability. On procedural unconscionability, and I apologize if I've gotten off cycle here. On procedural unconscionability, Ting, again, is binding as far as it goes. Ting, one, our principal argument on procedural unconscionability had to do with the lack of meaningful choice element on procedural unconscionability, which we have found in several cases saying that a form contract by itself, an adhesive contract to the extent it's adhesive by itself, is not necessarily procedurally unconscionable if there is, unless there's also a lack of meaningful choice. Ting, as it happens, addressed that point, and it found that whether or not there was a lack of meaningful choice in that case, that AT&T, not my client, but AT&T, the former owner of my client, the former long distance company, had, in fact, told customers who were upset about the provision at issue that everybody else would have the same thing. Here is the plaintiff's burden to show a lack of meaningful choice. They don't dispute that it's their burden. They don't dispute that they didn't do it. They didn't do it because they couldn't at that time, certainly. But that's neither here nor there. There's nothing to show that there's an absence of meaningful choice. Now, I think we're consonant with Ting as far as that goes. And at most, and I would emphasize this, if this Court gets to the procedural unconscionability issue, and if it finds that the form contract is, in fact, enough under Ting or whatever other authority that the Court is relying upon, that at most, the fact that it's a form contract barely gets you over the line of procedural unconscionability. And under the sliding scale analysis of amenders and all the other California, recent California, requires a particularly strong showing of substantive unconscionability in order to refuse to enforce a contract of any kind, arbitration or otherwise. Is it your view that looking at where we stand now in this case after Nagrampa, is it your thought that we should simply send the case back to the district court with instructions to grant your motion and then let the arbitrator sort through the questions about what to do with, unfortunately, the arbitration agreement? Well, we believe that the arbitration agreement, there are no gateway issues on the arbitration agreement because there's no showing of procedural unconscionability. So the only issue as to procedural unconscionability would undermine the whole contract or not. And if it undermines the whole contract, then nothing's enforceable. And if the arbitrator finds that, then we're out of luck. But all those arguments can be made to the arbitrator. In other words, that's not, is that anything we need to address? No, Your Honor, because under Nagrampa, there are no gateway, there would be a gateway issue if there's procedural unconscionability on the arbitration-only argument, the argument about its placement within the contract. But if you do not accept that argument and the only procedural unconscionability argument is this overall attack on the form contract, then they have not met one of the two elements that would be required to let this Court decide a gateway issue of unconscionability. And, yes, it would have to go to the arbitrator and be sorted out there. Now, let me pick up on something that you just said. You said you referred to sort of an overall attack on the unconscionability of the contract. Let me come back to the question I asked earlier, which is to say what happens if the attack, the unconscionability attack is focused exclusively on the arbitration clause? Now, obviously, the arbitration clause is part of the contract, and it may be that the contract containing the arbitration clause was presented in such a way as to support an argument for unconscionability. But except for that, the only argument is really focused upon the unconscionability arbitration clause. Is that something that Negrempa requires us to leave to the arbitrator? Well, I think the reason that Negrempa would require that, as the case stands, is that this Court in Negrempa is exactly what it did. It said there's no showing of unconscionability on the gateway level here. And if there isn't, there's no showing of procedural unconscionability directed solely at the arbitration clause. And if Negrempa stands... Now, is it conceivable that if you have an arbitration clause that's embedded in a larger contract, that you can have an argument of procedural unconscionability that's directed solely at the arbitration clause? Certainly. I mean, it could be concealed. It could be... One thing, though, that the Supreme Court of the United States has emphasized is that when you have an argument like that, you can't, at least Casarato and a couple of the earlier cases say that, that you can't say that it's enforceable except for the arbitration clause. It actually rejects that notion when you're looking at broader enforceability arguments. So I would say under Casarato the answer is no. And I'm trying to figure out the practical consequence of Negrempa and then of your interpretation of Negrempa. It sounds to me as though if the arbitration clause is embedded in a larger contract, any challenge to the enforceability of that arbitration clause on grounds of unconscionability can only be addressed to the arbitrator. Is that the practical consequence of your position? If the argument is a form contract argument, there are many other grounds of procedural unconscionability that may reflect solely on the arbitration clause or not. For example? Well, the one that they made, that it's not, you know, that it's not something that anyone could be aware of or that was concealed in some way. I see. Any other? I can't think of any at this time, but the procedural unconscionability has made most people just make a form contract argument, and that's not... In your view, if the only argument of procedural unconscionability is sort of a classic form contract adhesion, uneven bargaining power, that's not enough to take it out from Negrempa? It does not appear to be. In terms of that, it seems to be what Negrempa says, Your Honor. I don't see another way to read the case. If there is, then this Court will, I'm sure, enlighten us on that. It seems to be the way the Negrempa Court read it. Early in the opinion, they say in opposition, Negrempa argued that the arbitration clause was unenforceable on the grounds of unconscionability. And from that, then, they get the rule that that issue had to go to the arbitrator, even though her claim was focused solely on the arbitration clause, according to the way the Court saw the case. Yes, Your Honor, but I believe the reason it went is because on the procedural unconscionability side of that, the only argument they raised, or the only, they raised two arguments and the Court rejected, considered and rejected the other one, but the larger argument they raised was one that went after the whole contract. And when arguments are necessarily directed at the enforceability of the whole contract, Prima Paint indicates those go to the arbitrator, and Casarato and other cases indicate that once you've got arguments that, in fact, cover the waterfront there, the result should either or should not be that everything else, every other term and condition is enforced, but the arbitration clause isn't. If that's what you're basing it on, if you're basing it on something else, then obviously an arbitration clause may not be enforceable. Okay. Why don't you save the rest of your time, and we'll hear from the other side, and then we'll give you a chance to respond. I would like to have spoken about substantive unconscionability. Well, you may get your chance. Save it for the arbitrator, maybe. Okay. Good morning. My name is J. Paul Janak, and I'm one of the attorneys representing Mr. Lozano in this matter. My firm is Aris Ozello and Janak. Also present in court with me today is my co-counsel, Mr. Herb Fox. Pursuant to the court's directive that we be prepared to address the Negrepa case today, I'd like to start with that. I think in analyzing the Negrepa case and its applicability, if any, to Mr. Lozano's case, I think we need to start with the very first sentence of the opinion of the panel on that case. In that sentence, the panel states, quote, we must decide who determines whether an agreement containing an arbitration clause is unenforceable, the arbitrator or the court. The reason that sentence, I believe, is significant is because it establishes the context in which the court in Negrepa rendered its opinion, and that opinion is in a case where the issue is whether the agreement as a whole is unconscionable, not whether a particular clause in the agreement is unconscionable. In Negrepa, the court concludes, and correctly so under the FAA, that the arbitrator must make that determination, that is, a determination as to whether or not the agreement as a whole is unconscionable. Why is that? That's because that determination goes to the agreement as a whole, rather than just the arbitration clause or any other clause that's contained. But, counsel, Ms. Negrepa was not concerned with any other portion of her mail coups contract, other than the arbitration clause. I think it's important to understand. I mean, what the court was saying, I seem to remember that was on the panel, was that the attack that she mounted was an attack as to the formation of the contract, not particularly as to a clause, the arbitration clause, but as to the whole contract. You're absolutely correct in that regard. In the Negrepa case, the plaintiff, who was a franchisee, was suing for fraud in the inducement, and her objective in that case was to get out from under the contract. And in doing that, one of the claims she was making, fraud in the inducement, the court made very clear, that goes to the entire agreement as a whole. And for that reason, any type of adjudication of that claim has to be handled by the arbitrator,  But she also claimed that the contract was procedurally unconscionable because she hadn't read it. She wasn't a lawyer. She hadn't, but she had signed it, right? She did make those arguments, and those are arguments that the panel considered, because they were not arguments that went to the contract as a whole. They went specifically to the arbitration clause. She said, I didn't read that arbitration clause, for example, and it was buried, and so forth and so on. And the panel found those arguments, frankly, not convincing, probably because Ms. Negrepa was an experienced business person, seven years of marketing experience. She's entering into a franchise agreement where she has potential for significant monetary liability. In fact, she was being sued for owing $80,000. And I think the panel considered those facts and determined that under that type of business scenario, it's no excuse to raise your hand afterwards and say, I didn't see the clause, I didn't read the clause. When you're in a business transaction, you have an incentive to either sit down and read the stuff yourself or go out and hire yourself an attorney to read it and explain it to you. That's a very different scenario from what we have in our case, where we have Mr. Lozano, a consumer, purchasing the use of a cell phone and being handed a contract that's a form contract handed to him on a take-it-or-leave-it basis with no opportunity for negotiation. It's the same contract that is handed to millions of similar consumers. But I think the point that I'd really like to make today is that I think there is certainly ample room in the Negrampa decision for a distinction between an argument of unconscionability that goes to the agreement or the contract as a whole and an argument of unconscionability that goes just to the arbitration clause that's embedded in the contract. And here's why I think that there is room for that distinction. First, if you look at the facts of the two cases, which I've already given some explanation for, I think it's significant that the court in Negrampa ultimately noted that, and this is at 3384 of the opinion, the court noted, quote, Negrampa argues that the arbitration clause is procedurally unconscionable because the franchise agreement in which it is found constitutes a contract of adhesion. So again, the court is at least interpreting Negrampa's argument as attacking the entire franchise agreement as a contract of adhesion as opposed to just attacking the arbitration clause. In Lozano, we have a different situation. In Lozano, you have the plaintiff who is suing for breach of contract. To do so, the plaintiff must affirm that contract. He can't try to get out from underneath the contract, like the plaintiff in Negrampa who's suing for fraud and the inducement. So since he can't seek to undo the contract, his challenge to the contract necessarily must be limited to the arbitration provision, which he's claiming is unconscionable. And that's exactly the challenge that he has made in this case. If you look at Judge ---- I'm reading from paragraph, the lead letter is C, what Roman is embedded in. I guess it's Roman 2C. The paragraph begins, In addition to proffering a contract of adhesion argument, that is to say the argument that goes with the contract as a whole that the court says it cannot address, Negrampa also contends that the arbitration clause is procedurally unconscionable because it is found on the 25th page and she wasn't informed. I'm now reading from the second sentence of that first paragraph in sub C. Prima Paint does not preclude us from considering these additional procedural unconscionability arguments because they pertain specifically to the arbitration clause's validity. The question I have is what happens if part of the argument that someone resisting enforcement of the arbitration clause is that it is ---- to her or Negrampa's case or to him on a take-it-or-leave-it basis. Now, that argument certainly would go to the enforceability of the contract as a whole, as to say is the contract as a whole enforced unconscionable, but that argument might also go specifically and specifically to the arbitration clause. Is that argument unavailable under Negrampa to us because it's available to the contract as a whole or is it available here because it can be made as to each, either the contract as a whole or the clause specifically? Well, I would assert that it is available here because it's an argument that can be made either as to the contract generally, for example, if you're trying to get out from underneath the entire contract like Negrampa, or it can be made as to a specific clause, in the case of Mr. Lozano, trying to avoid the arbitration clause. So I think it's a matter of how you phrase your argument, so to speak. If you're making the argument that the contract as a whole was given to you on a take-it-or-leave-it basis and the contract as a whole is a contract of adhesion and the contract as a whole is therefore procedurally unconscionable, Negrampa would suggest that those arguments have to be made to the arbitrator. If you're making the argument that Mr. Lozano is making in his case because he's not trying to get out from underneath the contract, he wants to enforce the contract, he's claiming it was breached. If you're making the argument that the arbitration clause was given to you on a take-it-or-leave-it basis embedded in this larger contract, that it was not negotiable and that the company had the superior bargaining power, and therefore the arbitration clause is procedurally unconscionable, then under Negrampa I think a fair reading of that case is that that is a determination that can be made by the judge. And in Lozano, that is exactly what the judge did. I think it's important just to take a look at what Judge Ray said in his order because I think it clearly bears out that distinction. If you look, for example, starting in the excerpt of the record at 0099, which is going to be page 2 of Judge Ray's order, for the means of the court, that is going to be found at tab 6. On page 2, Judge Ray states, the court's role under the FAA is limited to determining, one, whether the arbitration agreement is valid and enforceable. I'm sorry to interrupt. I'm on this page, but where on the page are you? At the very bottom of the page. I'm with you.  Very bottom. I'm with you. It took me a minute. Thereafter, on page 4 of his order, that's excerpt from record 101, Judge Ray states, again quoting, the court's unconscionability analysis on a motion to compel, that's arbitration, is limited to the arbitration clause in the agreement. So reading those two statements by Judge Ray at the outset of his opinion, he clearly recognizes his boundaries. That is, that he, as the judge, is only going to be ruling on unconscionability insofar as it goes to the arbitration clause specifically, and not the contract generally. If you proceed with Judge Ray's opinion, you'll see that not only did he understand his boundaries, but he operated within them. If you look at his order on page 5, and that's the excerpt of the record at 0102, he states, quote, On June 10, 2002, this court determined that the related arbitration clauses of AT&T Wireless CSA are procedurally unconscionable. The court further notes that the process in which it engaged to make that conclusion was one of, quote, reviewing the arbitration agreement, that's the arbitration clause, for oppression and adhesion. And then Judge Ray concludes his analysis in his order by saying, thus, the arbitration clause in the welcome guide is procedurally unconscionable. So I think it's very clear from Judge Ray's order that he's made the distinction between looking at the unconscionability of the contract as a whole versus what he did, which was to look at the unconscionability of the arbitration clause embedded in the contract as a whole. I think the third level that we need to look at, and one of the questions that you were raising, is really is there any type of support out there in the law for the concept that you can have a distinction between a contract of adhesion argument that goes to the contract as a whole and a contract of adhesion argument that goes to a particular clause in the agreement. There are two cases that come to mind, one federal and one California, that recognize that distinction. In the Combe versus PayPal case, that's at 218 F sub 2nd 1165, and the specific page reference is 1172. The district court notes in that opinion, states, quote, a contract or clause is procedurally unconscionable if it is a contract of adhesion. Similarly in the Flores case, and that's Flores versus Transamerica. Would a clause be a contract of adhesion all by itself? In other words, doesn't the contract have to be one of adhesion and the clause is carried along with it? I think the law plainly recognizes that you can have an entire contract of adhesion or you can have a clause within a contract that is adhesive. And I think both the Combe case and the other case that I'd like to refer to, the Flores versus Transamerica Home First case, that's a California Court of Appeal case. It's at 93 Cal App 4th 846. The specific page reference is 853. In that case, the Court of Appeal in California stated, quote, in the present case, the arbitration clauses contained in the loan agreement and deed of trust constituted a contract of adhesion. So there again, you have, in this case, the California Court of Appeal saying that there can be individual clauses embedded in a larger contract which of themselves constitute a contract of adhesion. And I think the law both under the Combe case and the Flores case plainly recognizes that. And I think that's particularly significant in light of paragraph, sorry, in light of footnote 4 of the Negrappa decision where the panel discussed the fact that there are previous decisions, previous decisions by the Ninth Circuit at least, that focused on the unconscionability of an arbitration agreement or in the context of an arbitration agreement that was a document separate and apart from the contract. What I've just given the panel here today are two cases in which the courts have recognized that even a clause or a provision for arbitration that's embedded in a larger contract, that in and of itself could be considered a contract of adhesion. And that's the analysis that Judge Ray went through in the Lozano case. So in sum, our position is, and I think it's clear from Judge Ray's opinion, that the determination in Lozano related to an adhesive arbitration clause. He says that at least three times in his opinion. That determination was properly made by Judge Ray. Determination in Negrappa. I'm having trouble with this a little bit because we're so accustomed to talking about contracts of adhesion. And although we can pick up sort of odd bits and pieces from cases and talk about clauses of adhesion, I would be more comfortable with the argument if it were that the procedural unconscionability arguments that obviously under Negrappa can be made when directed specifically to a clause and not to the contract as a whole, the procedural unconscionability arguments can include that the clause was offered on a take-it-or-leave-it basis. I'm not necessarily comfortable with adopting the terminology that says it is a clause of adhesion, although I think the argument of procedural unconscionability as to the clause nonetheless can be made if it is this clause was offered on a take-it-or-leave-it basis. And I'm not sure that that argument is unavailable simply because the rest of the contract was also offered on a take-it-or-leave-it basis. I understand that. Let me give you an example. Sometimes, for example, when you go in to sign a contract, and actually a lot of times this happens in the medical field. You go into the hospital these days and you're asked to sign a waiver in connection with your surgery. And a lot of times there is an arbitration provision that is contained within the waiver and you're asked to specifically initial that. And you're actually given the option of initialing it or not initialing it. Now, in that context, you've got a clause, an arbitration clause, that's in a broader agreement that is not handed to you on a take-it-or-leave-it basis. In other words, you're told to read it and you're told that if you want to accept it, to initial it and accept it. You have a choice whether or not to do that. I contrast that with a situation in the Lozano case where the arbitration clause is embedded in the agreement. You're not given an opportunity to initial it whether or not you want it. It's given to you on a take-it-or-leave-it basis. Again, it's a clause of adhesion, a provision of adhesion. It, in and of itself, is a contract of adhesion because it's an agreement to arbitrate. If you took that provision out, that paragraph that we have here, out of the contract and put it over here separately, it could stand alone as a separate agreement. So that's the distinction I would make. Okay. Is every contract that has a take-it-or-leave-it feature to it procedurally unconscionable? Every contract? No. I mean, for instance, you step up to Burger King and you order a burger and it's $2.50. Is that a procedurally unconscionable contract? No. So take-it-or-leave-it by itself is not the desiderata. I mean, every contract that has a price is take-it-or-leave-it, right? That's true. But there's more to procedural unconscionability than take-it-or-leave-it. There's an unequal bargaining position. There's absence of negotiation, so forth and so on. So, yes, just take-it-or-leave-it, I would agree. That doesn't make it a procedurally unconscionable contract. Does the panel have any other questions for me? No. Okay. Thank you very much. Thank you very much. Mr. Falk, rebuttal. Briefly, Your Honor, I'd like to address just a couple more points on the Negrappa issue. I would like to spend 30 seconds on substantive unconscionability. Okay. I think it's clear that the argument here is directed at the whole contract, and you're trying to pluck out a piece of the contract and say we're really only talking about this piece. Now, that might be legitimate in some contracts that have printed parts, and then you negotiate other parts. That might be a case in which you had just adhesion that really was only directed at the arbitration clause and some other things and not the whole contract. More important, Your Honor asked me whether there was other circumstances in which there could be procedural unconscionability arguments based on form contracts containing arbitration clauses. There are some simple ones. There could be fraud just directed at the arbitration clause. But the one that strikes me as most important and most connected with California law is one that could have been but was not made here, which would be that, yes, it's unconscionable not because it's just a form but because there is an absence of meaningful choice as to arbitration. I can go to five other carriers and they'll all give me the same. They'll all send me to arbitration in the same way. That's an argument that, you know, in some circumstances can be made, and that argument, because it would direct the form that would be not addressing the whole contract would be the form plus absence of meaningful choice as to arbitration. Kagan. That strikes me as a fair argument. Let me ask you the question that I was addressing to the other side for a moment. What if we have a contract in which take it or leave it is one of the arguments that goes to the unconscionability argument? By itself, I think you're quite right. By itself, it doesn't get you there, but it's one of the arguments. Let's imagine that we have take it or leave it available as an argument against the contract as a whole, and we have take it or leave it available as against the specific arbitration clause. Does the fact that the argument is available against the contract as a whole mean that you cannot make it as against the arbitration clause itself? Well, the circumstances are the same. I think you're in the Casarotto field where it says in Terminix, the earlier case that laid down the rule that says that if you're looking at, if you're making unified analysis, you can't say, well, the price is okay. It's not unconscionable as to the price, but it's only unconscionable as to the arbitration. But you just premised that with the clause, if you're making a unified analysis. I'm trying to fall into Grandpa and say, well, you can argue that the specific arbitration clause is unconscionable. Grandpa clearly tells us that.  And I'm trying to figure out what arguments might be available when I'm addressing my argument specifically to the unconscionability of the arbitration clause. Does the fact that a take it or leave it argument is available against the contract as a whole mean that I can't make that same argument as to the clause itself? If that is all you have. No, it's not all I have. I'm trying to say whether I can make that argument, among others, if the argument is available against both the contract as a whole and against the unconscionability clause. If it's take it or leave it plus, and the plus is arbitration specific, then I would say that that is something that the Court could take. If it's take it or leave it and we're saying the form had all these provisions, but the only one that we think was unconscionable because it was take it or leave it is the arbitration clause, then I'd say no. But if it's take it or leave it plus, there's something else there that is arbitration If you look at the arbitration clause, then I think you're out for muddering a grandpa. Okay. I see my time is running out. Why don't we give you 30 seconds on substantive, although I think that we're talking substantive. No, you're over. But if we're talking substantive, we're probably going to get the California Supreme Court within 90 days, or as you say, losing a paycheck. Yes. And I guess the only reason I want to, the only things that I wanted to address very, very briefly here, and we'll let the California Supreme Court sort out everything else, is that one of the arguments that we made having to do with unconscionability, we also, I believe, linked into our preemption argument, which is that to require class arbitration or to refuse to enforce a contract unless class arbitration is permitted, it takes away the benefits, the very benefits of arbitration that the Federal Arbitration Act was. But that sounds as though that really is under the California case. Well, we'll find out what they say. I'll take your word for it, Your Honor. It depends what they reach, and perhaps we will supplement it. That's why they get the big bucks. And the CHP drives them around, as they do not drive us around. Thank you both for a very helpful argument on both sides. It was very nice. The case of Lozano v. AT&T Wireless Services is now submitted for decision. The last case on the argument calendar this morning is
judges: T.G. Nelson, W. Fletcher, Bea